# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA , <br><br> Plaintiff, <br> vs. <br><br> HENRY HUYNH, <br><br> Defendant. | CASE NO. 08cr2288 BTM-1 <br><br> **ORDER DENYING MOTION TO DISQUALIFY ATTORNEY GARY S. HARRISON** |

Attorney Gary S. Harrison represents the lead Defendant in this case, Henry Huynh. The Government moves to disqualify Harrison asserting that there is a serious potential for conflict arising out of his representation of three former clients, Vi Kien Tang, Henry Liu, and Da Thi Lam. For the reasons explained below, the Court **DENIES without prejudice** the Government's Motion for Harrison's disqualification.

## I. BACKGROUND

On July 10, 2008, the Grand Jury indicted fourteen defendants in the instant matter, which involves an alleged ecstasy distribution ring. Attorney Gary S. Harrison commenced his representation of the lead defendant, Henry Huynh, on December 11, 2008 [Docket No. 21].

On January 9, 2009, the Government brought a Motion to Inquire as to a Conflict of Interest of Attorney Gary S. Harrison [Docket No. 73]. The Government brought to the attention of the Court Harrison's representation of Vi Kien Tang (Defendant 8 in this case)

in a related Central District of California matter. Upon learning that the Government had also charged Vi Kien Tang in the instant matter, Harrison promptly withdrew from his representation of Tang in the Central District. (Harrison Decl. ¶ 8.)

On February 2, 2009, Attorney Harrison filed a Response to the Government's Motion to Inquire [Docket No. 90]. On February 5, 2009, the Government filed an Ex Parte Memorandum in Support of the Disqualification of Attorney Gary S. Harrison Because of an Actual Conflict of Interest. The Government's Ex Parte Memorandum alleges a conflict of interest based not only on Harrison's former representation of Tang, but also his representation of another individual, Henry Liu, in a prior matter. Harrison represented Liu when he was initially charged with attempted murder based on an incident involving several individuals in two cars outside an arcade. (Harrison Decl. ¶ 11.) Liu entered a negotiated plea for assault with a deadly weapon and was sentenced to two years in prison. (Id.) It is unclear from the record when Harrison's representation of Liu ended.

On February 23, 2009, the Government filed a Supplemental Submission in Support of Disqualification of Attorney Gary S. Harrison. The Government's Supplemental Submission alleges an additional potential conflict of interest based on Harrison's former representation of Da Thi Lam, Huynh's mother. On February 6, 2009, Harrison submitted a claim by Lam to the Drug Enforcement Administration Asset Forfeiture Section, concerning her alleged ownership of a 2004 Mercedes Benz that was seized in connection with this action. (Govt. Supp. Submission in Support of Disqualification, Ex. E.) The Government's wiretap line sheets present evidence that Huynh himself owned the car and that Lam may have falsified her claim. (Govt. Supp. Submission in Support of Disqualification, Ex. F–G.) On March 2, 2009, Harrison filed a Supplement Response to the Government's Supplemental Submission.

## II. DISCUSSION

In its Motion, the Government contends that a serious potential for conflict of interest exists based on attorney Harrison's probable division of loyalties between his current client,

Defendant Huynh, and his former clients, Vi Kien Tang, Henry Liu, and Da Thi Lam. The Government argues that this potential for conflict warrants Harrison's disqualification even if he obtains conflict waivers from all four clients.

A. The Right to Conflict-Free Counsel

An element of the Sixth Amendment right to counsel is the right of a defendant who does not require appointed counsel to choose who will represent him. United States v. Gonzalez-Lopez, 548 U.S. 140, 144 (2006). The Court must recognize a presumption in favor of Defendant's counsel of choice. United States v. Wheat, 486 U.S. 153, 164 (1988). This presumption may only be overcome by an actual conflict or a serious potential for conflict. Id. However, an attorney may proceed despite a conflict "if the defendant has made a voluntary, knowing, and intelligent waiver." United States v. Martinez, 143 F.3d 1266, 1269 (9th Cir. 1988) (quoting Garcia v. Bunnell, 33 F.3d 1193, 1195 (9th Cir. 1994)).

Nevertheless, "the essential aim of the [Sixth] Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant be inexorably represented by the lawyer whom he prefers." Wheat, 486 U.S. at 159. Federal district courts have an independent interest in ensuring that criminal trials are fair and ethical. Id. at 160. Accordingly, district courts possess "substantial latitude in refusing waivers of conflicts of interest not only in those rare cases where an actual conflict may be demonstrated before trial, but in the more common cases where a potential for conflict exists which may or may not burgeon into an actual conflict as the trial progresses." Wheat, 486 U.S. at 163.

Conflicts of interest may result from either simultaneous or successive representation. Thomas v. Municipal Ct. Of the Antelope Valley Judicial District of Cal., 878 F.2d 285, 288 (9th Cir. 1989). Here, attorney Harrison no longer represents Vi Kien Tang, Henry Liu, or Da Thi Lam. Thus, this is a case of successive representation. "With successive representation cases, 'conflicts of interest may arise if the cases are substantially related or if the attorney reveals privileged communications of the former client or otherwise divides his loyalties.'" Id. (quoting Manhault v. Reed, 847 F.2d 576, 580 (9th Cir. 1988), *cert. denied*, 488 U.S. 908

(1988)). "Substantiality is present if the factual contexts of the two representations are similar or related." Trone v. Smith, 621 F.2d 994, 998 (9th Cir. 1980). Moreover, where there is a "reasonable probability that confidences were disclosed which could be used against the former client in the later adverse proceeding, a substantial relationship between the two cases will be presumed." Thomas, 878 F.2d at 288.

In assessing the potential for conflict, the Court may look in part to the relevant rules of professional conduct. See United States v. Gaitan-Ayala, No. 07-CR-00268-01, 2008 WL 1752678 *3 (D. Haw. April 17, 2008). The Local Rules of this District require attorneys to comply with the State Bar of California's Rules of Professional Conduct. CivLR 83.4(b). These rules are not exhaustive and attorneys must also note the Model Rules of Professional Conduct of the American Bar Association ("ABA"). Id.

California Rule of Professional Conduct 3-310(E) ("Rule 3-310(E)") provides that "[a] member shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment."

ABA Model Rule of Professional Conduct 1.9(a) ("Rule 1.9(a)") further instructs that "[a] lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client gives informed consent, confirmed in writing." ABA Model Rule of Professional Conduct 1.9(c) also directs that a lawyer who has formerly represented a client may not thereafter "(1) use information relating to the representation to the disadvantage of the former client except as these Rules would permit or require with respect to a client, or when the information has become generally known; or (2) reveal information relating to the representation except as these Rules would permit or require with respect to a client."

Taking into account the above relevant case law and rules of professional conduct, the Court turns to the potential for conflict as it relates to each of Harrison's former clients.

B. <u>Harrison's Representation of Vi Kien Tang</u>

Harrison's former client Vi Kien Tang is Defendant 8 in this case. The Government represents that this case and the Central District case in which Harrison briefly represented Tang are substantially related. Both cases arose out of wiretap investigations concerning an ecstasy distribution ring. (Govt. Ex Parte Mem. In Support of Disqualification 2.) The Government argues that an actual conflict of interest may develop should Defendant Huynh wish to cooperate and testify against Defendant Tang in the instant case. Alternatively, the Government claims that if Defendant Tang wishes to cooperate as a witness against Huynh, Harrison's loyalty to Tang will prohibit him from vigorously cross-examining Tang.

Although the matter in the Central District case and the case here are clearly substantially factually related, Harrison disputes that a serious potential for conflict exists based on his prior representation of Tang. Harrison claims that he met with Tang only twice, first to discuss the possibility that Harrison would represent Tang in the Central District matter, and second to confirm his representation. (Harrison Decl. ¶ 6). Harrison alleges that he and Tang solely discussed matters related to potentially contesting Tang's detention hearing. (Harrison Decl. ¶ 9–10.) Harrison represents that their conversations were "extremely limited" and primarily covered Tang's personal background and his relatives' ability to post property. (<u>Id.</u>) Harrison states that they never discussed the facts of Tang's case nor the circumstances of his arrest. (Harrison Decl. ¶ 10).

Typically, an attorney is in the best position to determine when an ethical conflict exists or may develop during the course of a trial. <u>Holloway v. Arkansas</u>, 435 U.S. 475, 485 (1978) (quotations omitted). Furthermore, general public knowledge about a former client is insufficient to warrant disqualification of an attorney. See, e.g. <u>United States v. Cunningham</u>, 672 F.2d 1064, 1073 (2d Cir. 1982) (finding disqualification not warranted where defense attorney's representation, in a similar matter, of former client now testifying as a government witness was limited in duration and scope and attorney learned no facts that were not later revealed to the public). It appears that Harrison did not obtain any material

confidential information about Tang, so he should not run afoul of Rule 3-310(E). Because it also is not yet clear whether Huynh's interests will be materially adverse to Tang's in this matter, Harrison's representation, does not, at this time, violate Rule 1.9(a).

The Court finds that, on the basis of Harrison's very brief representation of Tang, the risk of potential conflict related to Tang is not serious enough on its own to warrant Harrison's disqualification. Nonetheless, the Court also recognizes that should Huynh or Tang decide to cooperate with the Government against one another, Huynh's interests may become materially adverse to Tang's in violation of Rule 1.9(a). Therefore, the Court hereby directs Harrison to provide a copy of the this decision to Tang's present counsel. Tang must also provide written consent to Harrison representing Huynh. The Court further requires Huynh to provide a written waiver of Harrison's potential conflict. If Harrison secures the requisite consent and waiver, he will be permitted to proceed as Huynh's attorney at this time.

C. Harrison's Representation of Henry Liu

The Government cannot yet confirm to the Court that Liu will be either a witness or a defendant in this action. Nonetheless, the Government argues that evidence demonstrating Liu's possible criminal liability in this matter and his ongoing relationship with Huynh suffices to create a serious potential for conflict warranting Harrison's disqualification. Harrison maintains, however, that his prior representation of Liu was unrelated because it did not concern drugs. (Harrison Decl. ¶ 11.) Harrison alleges that any confidential information he acquired during his representation of Liu will be irrelevant here.

The Court finds Harrison's prior representation of Liu more problematic than his representation of Tang. Although not yet involved in this case, the possibility that the Government will indict Liu or call him as a witness is not unrealistic. The Government's investigation of Defendant Edward Chien (14) resulted in evidence that Liu may have accepted payments from him for a drug debt to Huynh. (Govt. Ex Parte Mem. In Support of Disqualification, Ex. C.) The wiretap line sheet further evinces some ongoing relationship between Huynh and Liu.

At this time, however, it remains unclear if or how confidential information Harrison obtained during his prior representation of Liu might pertain to the present action. The current matter appears to involve Asian gangs. Harrison admits that the prosecution alleged that Asian gangs were involved in Liu's assault case. Investigatory reports submitted by the Government also show that the assault arose out of Liu's membership in the Sunnyside "Wah Ching" gang. (Govt. Supp. Submission in Support of Disqualification, Ex. D.) Harrison claims, however, that Liu denied these allegations and revealed no confidential information to him regarding Asian gangs. The wiretap line sheet, on the other hand, demonstrates that Huynh may have provided money to Liu while he was serving time in prison for the assault with a deadly weapon charge and that he had "work" available for Liu upon his release. (Govt. Ex Parte Mem. In Support of Disqualification, Ex. A.) This evidence may, or may not, indicate similar Asian gang activity in both cases. Because the Court cannot yet ascertain the extent of gang involvement in both cases, it likewise cannot determine now whether the matters will reveal themselves to be substantially related. However, if Liu were to testify against Huynh and state that he was in a gang, Harrison might want to cross-examine and impeach Liu with his denials of gang affiliation given in confidence to Harrison during the prior representation. This would create an actual conflict.

Thus, while the above evidence presents some potential for conflict, the Government has not overcome the presumption in favor of allowing Huynh the counsel of his choice. In the pre-trial context, "relationships between parties are seen through a glass, darkly. The likelihood and dimensions of nascent conflicts of interest are notoriously hard to predict, even for those thoroughly familiar with criminal trials. " Wheat, 486 U.S. at 162–163. Based on the evidence available at this time, the Court cannot find that Harrison will necessarily or even likely draw here upon confidential information acquired during his prior representation of Liu. Because Liu remains unindicted and not yet a witness, it is similarly ambiguous whether Huynh's interests will become materially adverse to Liu. As a result, Harrison does not, at this stage, risk violation of Rule 3-310(E) or Rule 1.9.

The Court notes that the Government, not Liu, filed the Motion to Disqualify Harrison.

Other courts have found the potential for conflict less significant where the former client has not moved for disqualification. Compare Cunningham, 672 F.2d at 1072 (reversing district court's order disqualifying defense counsel who formerly represented government witness and recognizing that "[t]he refusal to disqualify in the absence of a motion by the former client is all the more appropriate in the context of a criminal prosecution with its implication of constitutional rights"), with United States v. James, 708 F.2d 40, 45 (2d Cir. 1983) (affirming district court's order disqualifying defense counsel and emphasizing that former client joined the motion to disqualify).

Furthermore, an attorney is not prohibited from cross-examining a former client where his prior representation of the client was unrelated or the attorney restricts his questioning to the public record. See Mannhault, 847 F.2d at 580 (no actual conflict of interest arose out of defense attorney's cross-examination of key government witness who was also a former client in an unrelated case); see also Cunningham, 672 F.2d at 1073 (disqualification not necessary where cross-examination of defense counsel's former client in related case was limited to the public record and both former and current clients waived any potential conflict).

Thus, the Court finds that the potential for conflict related to Harrison's previous representation of Liu is not, at this time, serious enough to warrant disqualification. Should more information about Asian gang activity reveal that the cases are substantially related, the risk that Harrison will draw upon confidential information learned from Liu may escalate. In the alternative, if the Government indicts Liu or confirms that he will appear as a witness, the possibility that Defense counsel will violate Rule 1.9 or divide his loyalties may become more serious. At this stage, Harrison may continue to represent Huynh, if Huynh provides a written waiver of any conflict certifying that he has read this order.

D. Harrison's Representation of Da Thi Lam

The Government also argues that Harrison's representation of Da Thi Lam ("Lam"), Huynh's mother, creates a serious potential for conflict. Harrison represents that he obtained no confidential information from Lam in regard to her claim to the DEA Asset Forfeiture

Section. Harrison also affirmatively informed Lam that he could not represent her beyond her initial claim due to his attorney-client relationship with her son.

A potential for conflict related to Lam exists insofar as she could become a witness or defendant in this case. For example, the Government alleges that Huynh drove the suspect car during a drug transaction upon which the indictment is based. (See Indictment, Count 1, ¶¶ 188–191.) If Harrison intends to claim that Huynh was not in the car at the time of the transaction, he may wish to call Lam to testify that she owns and controls the car. Additionally, Harrison may find reason to call Lam as a witness in support of Huynh for other reasons. Should Harrison call Lam, however, the Government may impeach her credibility with evidence that she falsified her forfeiture claim and does not in fact own the suspect car. If this circumstance arises, Harrison will face a conflict over whether to advance the interests of Huynh by calling Lam, or to protect his former client from perjuring herself or necessarily invoking the Fifth Amendment.

Harrison has represented to the Court, however, that he does not intend to contest Huynh's presence in the car at the time of the alleged drug transaction. Moreover, he anticipates no other need to call Lam as a witness. At this time, it appears unlikely that Harrison will utilize confidential information obtained from Lam in violation of Rule 3-310(E). The Government also has not charged Lam and does not presently intend to call her as a witness. Lam's interests thus are not now materially adverse to Huynh's, so Harrison does not risk violation of Rule 1.9. Additionally, Lam has not joined the Government's Motion to Disqualify Harrison. The Court therefore finds that, as with Liu, the potential for conflict is not currently serious enough to warrant disqualification if Huynh provides a knowing, intelligent, and voluntary waiver. Again, the Court recognizes that should the Government charge Lam or either party decides to call her as a witness, this conflict may ripen. However, given that there was representation of both Lam and Huynh in a similar matter, both must waive the conflict in writing.

As no serious potential for conflict exists at this time, the Court hereby **DENIES without prejudice** the Government's Motion for Disqualification of Attorney Gary S.

Harrison.

### III. CONCLUSION

For the reasons explained above, the Court **DENIES without prejudice** the Government's Motion for Disqualification of Attorney Gary S. Harrison.  In order to continue representing Defendant Henry Hunyh, Attorney Harrison must obtain from Huynh a knowing, intelligent, and voluntary written waiver of any conflicts arising out of his prior representations of Defendant Vi Kien Tang, Henry Liu, and Da Thi Lam.   Tang must also file a knowing, intelligent, and voluntary consent to have Harrison represent Huynh.  Lam must also file a written consent to Harrison's represent of Huynh.  The consents and waivers should be filed with the Court on or before **Friday, April 10, 2009.**

**IT IS SO ORDERED.**

DATED:  March 24, 2009

_____
Honorable Barry Ted Moskowitz
United States District Judge